Charles Lew, Esq. (SBN 227495)
*Charles@thelewfirm.com*
Victor R. Balladares, Esq. (SBN 327488)
*Victor@thelewfirm.com*
Isaiah Artest, Esq. (SBN 320326)
*Isaiah@thelewfirm.com*
**THE LEW FIRM, APC**
9440 Santa Monica Blvd, Suite 301
Beverly Hills, California 90210
Telephone: (310) 279 5145
Facsimile: (310) 300 1819

Attorneys for Plaintiffs,
SKYY MYLES PROMOTIONS LLC and BLK PRIME BOXING, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYY MYLES PROMOTIONS LLC, a Maryland limited liability company; and BLK PRIME BOXING LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>CASH JONES, professionally known as "WACK 100," an individual; JOHNATHAN PORTER, professionally known as "BLUEFACE," an individual; KICK STREAMING PTY LTD, an Australian proprietary limited company; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO. 2:26-CV-11081<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>1. DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501);<br>2. CONTRIBUTORY COPYRIGHT INFRINGEMENT BY INDUCEMENT;<br>3. VICARIOUS COPYRIGHT INFRINGEMENT<br>4. BREACH OF CONTRACT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs SKYY MYLES PROMOTIONS ("Skyy Myles") and BLK PRIME BOXING LLC, ("BLK Prime") (collectively, "Plaintiffs"), by and through their undersigned counsel, allege as follows, on personal knowledge as to themselves and their own acts, and on information and belief as to all other matters, against Defendants CASH JONES, professionally known as "Wack 100" ("Jones"); JOHNATHAN PORTER, professionally known as "Blueface" ("Porter"); KICK STREAMING PTY LTD ("Kick"); and DOES 1 through 10, inclusive:

## NATURE OF THE ACTION

1. This is an action for willful copyright infringement arising from the unauthorized, real time retransmission of a pay per view boxing event to the public over the internet. On September 19, 2026, Skyy Myles Promotions presented a professional boxing card titled "The Supper" (the "Event"), headlined by the professional debut of Chrisean "Holy Hands" Malone, professionally known as Chrisean Rock. Skyy Myles owns the audiovisual recording of the Event. BLK Prime, its exclusive live digital distributor, recorded and broadcast the Event live and made it available to the public through BLK Prime's pay per view service at a price of $29.99.

2. While the Event was airing, on information and belief, Defendant Jones appeared on camera on a verified livestream channel owned by Defendant Porter on the Kick streaming platform, stated "We paid $29.99," and told viewers who had not downloaded the Event that they "don't have to" because the channel was showing it.

The channel's stream displayed the BLK Prime broadcast for well over an hour, bearing the channel's own watermark.

3. Defendants did not merely take Plaintiffs' work. Jones and the persons operating the Channel’s stream announced the unauthorized retransmission while it was underway and invited the public to watch instead of purchasing access from BLK Prime. The Channele garnered tens of thousands of viewers of the unauthorized retransmission. They announced the taking while it was underway, invited the public to watch instead of paying, and, on information and belief, did so to retaliate against the Event's headliner over an unrelated financial dispute. The infringement was deliberate, public, and commercial. Plaintiffs bring this action to recover the damages caused by the infringement, recover profits attributable to it, to disgorge the profits it produced, and restrain further unauthorized exploitation of the Broadcast.

4. BLK Prime also seeks relief for breach of the contractual restrictions governing the purchased access used to obtain the Broadcast. Those restrictions limited use to personal, noncommercial purposes and included express promises against providing the content to others or causing or permitting others to engage in prohibited uses. BLK Prime asserts this claim against the defendant or defendants who entered that agreement and breached those obligations.

## JURISDICTION AND VENUE

5. This action arises under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §

1331, because the claims arise under the laws of the United States, and under 28 U.S.C. § 1338(a), which grants the district courts original and exclusive jurisdiction of any civil action arising under any Act of Congress relating to copyrights. This Court has supplemental jurisdiction over BLK Prime's breach-of-contract claim pursuant to 28 U.S.C. § 1367(a), because that claim arises from the same purchase, access, and unauthorized retransmission of the Broadcast underlying the federal copyright claims and forms part of the same case or controversy.

6. This Court has personal jurisdiction over Defendant Jones because, on information and belief, he resides in and is domiciled in the State of California, within this District, in Los Angeles County.

7. This Court has personal jurisdiction over Defendant Porter because, on information and belief, he resides in and is domiciled in the State of California, within this District, in Ventura County.

8. This Court has personal jurisdiction over Defendant Kick on facts specific to this suit. Kick hosted, transmitted, recorded, stored, and continues to serve the infringing retransmission of a broadcast distributed by a California based plaintiff, on a channel operated from and marketed to the United States, and on information and belief, transmitted that retransmission to viewers in California and shared in the revenue the Channel earned during it. Kick contracts with creators and viewers in California, markets its service here, and derives revenue from California users. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229–31

(9th Cir. 2011); *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc). On information and belief, Kick maintained an ongoing service relationship with Porter, a California resident, through which it provided the Channel's hosting, transmission, replay, and subscription functionality. The unauthorized retransmission alleged here occurred through the services Kick provided in that relationship.

9. In the alternative, jurisdiction over Kick is proper under Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' claims arise under federal law, Kick is not subject to jurisdiction in any state's courts of general jurisdiction, and Kick's contacts with the United States as a whole, including its United States facing service, its United States creators and viewers, and the transmission alleged here, make the exercise of jurisdiction consistent with the Constitution and laws of the United States. *See Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040–41 (9th Cir. 2022).

10. Venue is proper in the Central District of California, Western Division, under 28 U.S.C. § 1400(a), the venue provision that governs copyright actions, which permits suit in the district in which the defendant or the defendant's agent resides or may be found. In this Circuit venue under that section is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state. *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), rev'd on other grounds sub nom. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

11. Defendants Jones and Porter reside in this District, in the Counties of

Los Angeles and Ventura, and Defendant Kick is subject to personal jurisdiction here for the reasons alleged above. The forum provision in Plaintiffs' agreement with each other binds only Plaintiffs and does not govern this action against third parties.

## THE PARTIES

12. Plaintiff Skyy Myles Promotions is, and at all relevant times was, a Maryland Limited Liability Company, with its principal place of business at 2927 St. Paul Street, First Floor, Baltimore, Maryland 21218. Skyy Myles is a boxing promoter and presented the Event described below.

13. Plaintiff BLK Prime Boxing, LLC, doing business as BLK Prime Boxing, is, and at all relevant times was, a Delaware limited liability company with its principal place of business in Palo Alto, California. BLK Prime operates a subscription and pay per view streaming service, and recorded and broadcast the Event described below. At the time of the Event, BLK Prime operated the pay-per-view service at ppv.blkprime.com and was the contracting service provider identified as “Publisher” in that service’s Terms of Use.

14. Defendant Cash Jones, professionally known as "Wack 100," is an individual who, on information and belief, resides in Los Angeles County, California. On information and belief, Jones is a talent manager who manages Defendant Porter and publicly identifies himself as such, including on his verified Instagram account, @wack100.

15. Defendant Johnathan Porter, professionally known as "Blueface," is an

individual who, on information and belief, resides in Ventura County, California. Porter owns, controls, and operates the verified channel located at kick.com/bluesclues124 (the "Channel"), which links to Porter's own verified social media accounts, including Instagram account @bluefasebabyy.

16. Defendant Kick Streaming Pty Ltd is an Australian proprietary limited company with a registered address at Level 2, 287 to 293 Collins Street, Melbourne, Victoria 3000, Australia. Kick owns and operates the livestreaming platform located at kick.com, which hosts, transmits, records, stores, and monetizes the Channel's livestreams and recorded replays.

17. Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sue those defendants by fictitious names. Plaintiffs are informed and believe, and on that basis allege, that the fictitiously named defendants include the persons who operated the Channel's cameras and stream while the Broadcast was displayed, and any person who affirmatively encouraged its retransmission. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

18. The Doe Defendants also include any presently unidentified person or entity that entered the Terms of Use governing the purchased access used to obtain the Broadcast and then used, provided, or permitted the use of that access and content for the unauthorized retransmission alleged herein. The breach-of-contract claim against the Doe Defendants is limited to defendants who became parties to that

agreement and breached their own contractual obligations.

19. Plaintiffs are informed and believe, and on that basis allege, that Defendant Jones acted as Defendant Porter's talent manager and appeared on Porter's Channel in that capacity and with Porter's permission. Plaintiffs do not allege a general agency among all Defendants. Permission to appear on the Channel is not authorization to retransmit the Broadcast, and Plaintiffs do not conflate the two (2). This allegation is based on Jones's publicly identified role as Porter's manager, his appearance on the verified Channel linked to Porter's social media accounts, and his participation in the Channel's Porter-branded "Blue Girls Club" programming. Taken together, those circumstances support the inference that Jones's appearance on the Channel occurred with Porter's permission.

## FACTUAL ALLEGATIONS

### A. The Event, the Broadcast, and Plaintiffs' Rights

20. On Saturday, September 19, 2026, Skyy Myles Promotions presented the Event at the Hyatt Regency Baltimore Inner Harbor in Baltimore, Maryland. The main card was headlined by the professional boxing debut of Chrisean Malone against Ku'Shiyah Williams. The card began at approximately 8:00 p.m. Eastern Time.

21. BLK Prime captured and broadcast the Event live as an audiovisual work consisting of multiple camera angles, directed shot selection, replays, graphics, onscreen scoring and branding, and commentary (the "Broadcast"). BLK Prime

recorded the Broadcast simultaneously with its transmission, under the Agreement described below and with the authority of Skyy Myles. The Broadcast was therefore "fixed" within the meaning of the Copyright Act, which provides that a work consisting of sounds, images, or both, that are being transmitted, is fixed if a fixation of the work is being made simultaneously with its transmission by or under the authority of the author. 17 U.S.C. § 101. Telecasts of live sporting events that are recorded as they are transmitted are copyrightable audiovisual works. *See Baltimore Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 668–69 (7th Cir. 1986); *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 846–47 (2d Cir. 1997) (distinguishing the underlying game from the copyrightable broadcast of it). Both decisions arise outside this Circuit and are cited as persuasive authority.

22. Skyy Myles and BLK Prime are parties to a written Event Distribution and Promotional Services Agreement with an effective date of August 9, 2026, executed on behalf of Skyy Myles on or about August 26, 2026 (the "Agreement").

23. Under the Agreement, all audiovisual recordings, broadcast masters, and other audiovisual content created from the live Event, including the Broadcast, are owned by Skyy Myles, subject only to the license the Agreement grants BLK Prime. Skyy Myles owns the copyright in the Broadcast.

24. Under the Agreement, Skyy Myles appointed BLK Prime the exclusive worldwide digital distributor of the live pay per view broadcast of the Event on the

Event date, with the right to livestream, transmit, and exhibit it, and authorized BLK Prime to offer replay access on a nonexclusive basis after the Event. On September 19, 2026, BLK Prime therefore owned the exclusive right to perform the Broadcast publicly by digital transmission, and it is entitled to sue for infringement of that right committed while it held it. 17 U.S.C. §§ 201(d)(2), 501(b).

25. On September 23, 2026, an application to register the copyright in the Broadcast was submitted to the United States Copyright Office.

26. The Broadcast was made available to the public through BLK Prime's pay-per-view service at a price of $29.99 per purchase. A single purchase gave access to the Broadcast as it streamed live on September 19, 2026, and as it continued to stream on September 20, 2026. No Defendant was licensed or otherwise authorized to perform or transmit the Broadcast to the public. The $29.99 purchase referenced by Jones did not confer a license to retransmit the Broadcast to the public through the Channel or to make a recorded retransmission publicly available.

27. BLK Prime offered access to the Broadcast through its pay-per-view service subject to written Terms of Use bearing the date July 1, 2020 (the "Subscriber Terms"). The Subscriber Terms are distinct from the Event Distribution and Promotional Services Agreement between Plaintiffs. Section 6 of the Subscriber Terms granted a limited, nonexclusive, nontransferable, revocable license for personal, noncommercial use of the service and receipt of its content. Section 7 excluded commercial use, distribution, public performance, and public display from

the permitted uses. It also contained express promises against providing or otherwise transferring the content, reproducing or copying films, and causing or permitting another party to undertake the prohibited acts. BLK Prime gave no written permission for the retransmission alleged herein.

28. Before obtaining access to the Broadcast, the purchasing defendant was presented with reasonably conspicuous notice that completing the purchase and accessing the service constituted acceptance of the Subscriber Terms, together with an opportunity to review those terms. On information and belief, the purchasing defendant completed the transaction and accessed the Broadcast after receiving that notice, thereby manifesting assent to the Subscriber Terms.

29. On information and belief, Jones was the purchaser who accepted the Subscriber Terms and obtained the access used for the retransmission. This allegation is based on his statement that “we paid $29.99,” his identification of the purchased Broadcast, and his directions concerning its presentation to the Channel’s audience. Alternatively, if another person made the purchase and entered the Subscriber Terms, that person is presently sued as a Doe Defendant. BLK Prime provided the purchased access, which was then used to obtain the Broadcast shown on the Channel.

**B. Defendants Announce and Carry Out the Free Retransmission**

30. The Channel is a verified Kick channel with approximately 276,000 followers. During September 2026, the Channel carried a multiday livestream series branded "Blue Girls Club." Frames of the Channel's stream sampled by Plaintiffs

bear the watermark "@Bluesclues124" and an onscreen counter (for example, "36338/36400"). The on-screen counter is identified as a feature of the preserved Channel footage. Plaintiffs do not rely on that counter as a measure of the number of persons who viewed the Broadcast or the number of authorized purchases displaced.

31. On the evening of September 19, 2026, a man appeared on camera on the Channel's live stream and addressed the Channel's audience. On information and belief, and after reasonable investigation, that man is Defendant Jones. In a recording of that stream, he states, among other things: "We ain't scared to tell you that. We paid $29.99"; "If you ain't downloaded Rock's fight, you don't have to"; "We're going to put the camera right on the motherfucker, just for y'all"; "Clip it!"; "So those of y'all that have not downloaded it, come in to Blues Clues 124"; "We're going to wide screen and zoom in, just for you!"; "Spread the word. Blues Clues 124 on Kick is showing the fight. Live and direct. It's already on the screen behind me"; and "Don't blame Blueface. He ain't here." He also states, in words partly inaudible on the recording, "we're coming to get it another way. That's a fact."

32. A recording of Jones's statements was reposted to Instagram at approximately 6:11 p.m. Pacific Time (9:11 p.m. Eastern Time) on September 19, 2026, and was separately circulated by a clip account under the caption "WACK100 SAYS THEY'RE STREAMING CHRISEAN'S FIGHT LIVE IN THE BGC HOUSE 'COME & WATCH'."

33. The recorded replay of the Channel's September 19 stream, which

remained publicly available on Kick as of September 22, 2026, shows the Broadcast displayed in an inset window in the upper right corner of the Channel's stream. At approximately 9:10 p.m. Eastern Time, the inset displays the BLK Prime logo and the legend "Skyy Myles Promotions 'The Supper'" with "Main Card Coming Up." In every frame Plaintiffs sampled at four minute intervals from that point until approximately 10:56 p.m. Eastern Time, the inset displays the Broadcast, including bouts, ring introductions, officials, corner activity, crowd footage, and BLK Prime's onscreen scoring graphics. After the inset was removed, a television in the background of the Channel's stream continued to show boxing footage. The recorded replay described above is located at https://kick.com/bluesclues124/videos/5e227c22-ee9e-4f2f-8cf7-b3edb90c2a57.

34. Kick identifies that replay as video number 123776310, associated with livestream number 128077428. The material retransmitted included the Broadcast’s selected camera images and onscreen graphics as presented in BLK Prime’s produced audiovisual program. Jones expressly offered that retransmission as a means of watching the Event without purchasing authorized access. The free showing served the same viewing purpose as the authorized pay-per-view transmission and competed with that transmission while the Event was underway.

35. The retransmission reached the public. The Channel's recorded replay of its September 19, 2026 stream, a recording of approximately 26.8 hours that includes the retransmission, reflected approximately 49,000 views on Kick as of

September 22, 2026, in addition to the live audience that watched in real time. Members of the public contemporaneously reported the retransmission to the Event's representatives, including messages stating that "Wack100 is boasting about streaming your PPV content on Blueface's Kick account (Bluesclues124) so people don't have to pay for it" and that the Channel was "live broadcasting the whole PPV."

36. On information and belief, Defendants' purpose was retaliatory. A member of the public reported that Jones stated, in substance, that because the Event's headliner would not pay Porter, Defendants "will get money this way," a statement consistent with Jones's on camera remark that "we're coming to get it another way."

**C. Porter's Control of, and Benefit From, the Channel**

37. Porter owns the Channel, which is verified and linked to his own verified social media accounts. On information and belief, Porter has the right and ability to decide what the Channel transmits, who appears on it, and whether any stream continues or is terminated. The infringing retransmission occurred on Porter's Channel, during a stream series branded with Porter's "Blue Girls Club," and was announced by Porter's own manager.

38. The retransmission was used to draw viewers to Porter's Channel specifically. While the Broadcast was displayed, Jones directed viewers who had not purchased the Event to "come in to Blues Clues 124," that is, to the Channel, and told the audience to "spread the word" that the Channel was showing the fight. The Channel is monetized. On information and belief, Porter received subscriptions, tips,

and other paid support through the Channel during the retransmission, and the free showing of a paid event was the draw for that audience.

39. On information and belief, the retransmission drew tens of thousands of viewers to the Channel, approximately 50,000, many of whom watched for extended periods, and Porter is compensated based on the Channel's viewership, so that the free availability of the Broadcast translated directly into revenue for Porter. Kick’s publicly available channel information identifies the Channel as an Affiliate with subscriptions enabled. Jones expressly invited viewers to the Channel to watch the Broadcast without purchasing authorized access. These circumstances support the inference that the free retransmission was used to attract an audience to a channel offering paid subscriptions. The number of viewers who watched the Broadcast, the purchases displaced, and the payments attributable to the retransmission remain to be determined from audience and transaction records.

40. On information and belief, Jones gained social media followers and publicity from the retransmission and the public attention that followed it.

**D. Kick's Role**

41. Kick hosted the live retransmission on its servers, transmitted it to the public, recorded it, and continues to store and publicly serve the recorded replay from its platform. Kick shares in the revenue generated by channel subscriptions and related monetization on its platform, including on the Channel.

42. On information and belief, members of the public reported the Channel's

retransmission to Kick while it was ongoing on September 19, 2026; at least one (1) member of the public stated that evening, "I reported it, and I'm sure others are as well." The recorded replay remained publicly available on Kick as of September 22, 2026.

43. Kick has the technical ability to terminate a live stream, remove a recorded replay, and suspend a channel, and it publishes a policy stating that it will do so for infringement. As of September 24, 2026, Kick’s publicly accessible metadata identified the recorded replay as public and not deleted, and the replay’s media playlists remained accessible through Kick’s platform.

**E. Harm to Plaintiffs**

44. Viewers who watched the Event on the Channel had no need to purchase it from BLK Prime. Defendants' conduct diverted purchases and the pay per view revenue that Plaintiffs share under the Agreement, depressed the Event's sales and value, damaged Plaintiffs' relationships with fighters, sponsors, and distribution partners, and undermined the market for Plaintiffs' future events. Plaintiffs' damages will be proven at trial. The authorized live transmission had a limited commercial window: purchasers could watch the Event as it occurred, before its outcome was known. By offering the same Broadcast free of charge during that window, the Channel competed directly for viewers whom Plaintiffs sought to reach through authorized pay-per-view sales. Removing the recorded replay afterward could not restore the expired opportunity to sell live access to those viewers.

45. Unless enjoined, Defendants will continue to infringe, including through the continued public availability of the recorded replay, causing irreparable harm for which there is no adequate remedy at law. Jones stated on camera, while the Broadcast was displayed, that "we're coming to get it another way."

**FIRST CAUSE OF ACTION**

**Direct Copyright Infringement, 17 U.S.C. §§ 106(4), 501**

**(Against Defendants Jones and DOES 1 through 10)**

46. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

47. To establish infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). The Copyright Act grants the copyright owner the exclusive right to perform an audiovisual work publicly. 17 U.S.C. § 106(4). Performing a work publicly includes transmitting a performance of it to the public by means of any device or process, whether members of the public receive it in the same place or in separate places, and at the same time or at different times. 17 U.S.C. § 101. Retransmitting a broadcast to the public over the internet as it airs is a public performance. *American Broadcasting Cos. v. Aereo, Inc.*, 573 U.S. 431, 448–49 (2014).

48. The Broadcast is an original audiovisual work fixed simultaneously with its transmission. Skyy Myles owns the copyright in it and sues for all of the

infringement alleged here. BLK Prime held the exclusive right to perform it publicly by digital transmission on September 19, 2026, and sues for the infringement of that right committed that day.

49. On information and belief, Jones and DOES 1 through 10 volitionally caused the Broadcast to be publicly performed without authorization: Jones by arranging, announcing, and directing its retransmission on the Channel, including stating that the camera would be put on the Broadcast and that it would be shown "wide screen" and zoomed in, and DOES 1 through 10 by operating the Channel's cameras and stream while the Broadcast was displayed. The material publicly performed included BLK Prime's selected camera images, directed shot sequence, and onscreen graphics in the form in which they appeared in the Broadcast. Jones identified that particular Broadcast as the content to be shown and gave affirmative directions concerning its presentation through the Channel, including camera placement, framing, and enlargement. Those directions concerned the intentional transmission of Plaintiffs' audiovisual program to the Channel's public audience while the authorized Broadcast was airing.

50. The infringement was willful. Jones stated during the stream that "we paid $29.99" for the Event and that viewers who had not downloaded it "don't have to." Jones's acknowledgment that access to the Broadcast cost $29.99, coupled with his invitations to watch through the Channel without purchasing access, supports the inference that he deliberately used the Broadcast to provide the Channel's audience

with a substitute for Plaintiffs' paid transmission. Plaintiffs granted no right to retransmit the Broadcast publicly in connection with the purchase Jones described.

51. Plaintiffs are entitled to their actual damages and Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b), or, to the extent available, statutory damages under 17 U.S.C. § 504(c), together with injunctive relief under 17 U.S.C. § 502, impoundment under 17 U.S.C. § 503, and, to the extent available, costs and attorney's fees under 17 U.S.C. § 505. Plaintiffs do not seek duplicative recovery for the same loss, and any recovery of Defendants' profits shall exclude amounts already taken into account in calculating Plaintiffs' actual damages.

**SECOND CAUSE OF ACTION**

**Contributory Copyright Infringement by Inducement**

**(Against Defendant Jones and those DOES who affirmatively encouraged the retransmission)**

52. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

53. A party is contributorily liable for the infringement of another if it intended that infringement, which may be shown where the party induced the infringement. *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___ (2026) (slip op. at 7–9); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005). Inducement is shown by clear expression or other affirmative steps taken to foster infringement. *Grokster*, 545 U.S. at 936–37;

*Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013).

54. Jones induced the infringing public performance by the persons operating the Channel's stream through clear expression and affirmative steps: on the stream he announced the free showing, stated that the camera would be put on the Broadcast and that it would be shown "wide screen" and zoomed in, told viewers who had not downloaded the Event that they did not have to, and told the audience to "spread the word" that the Channel was showing the fight.

55. The direct infringement underlying this claim includes the unauthorized public performance by the persons operating the Channel’s cameras and stream. Jones’s instructions concerning camera placement, framing, and presentation expressly encouraged those persons to transmit the Broadcast to the Channel’s audience without authorization. His statements that viewers need not purchase access further demonstrated his intent that the operators use the Channel to provide an unauthorized substitute for the paid Broadcast.

56. Jones's contributory infringement was willful, entitling Plaintiffs to the relief described above.

**THIRD CAUSE OF ACTION**

**Vicarious Copyright Infringement**

**(Against Defendants Porter, Kick, and those DOES with the right and ability to control the Channel)**

57. Plaintiffs incorporate by reference each of the foregoing paragraphs as

though fully set forth herein.

58. A defendant is vicariously liable for the infringement of another when the defendant has the right and ability to supervise the infringing conduct and a direct financial interest in it. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262–64 (9th Cir. 1996). The control element asks whether the defendant had both the legal right to stop or limit the infringement and the practical ability to do so. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173–75 (9th Cir. 2007).

59. A financial benefit exists where the availability of the infringing material acts as a draw for customers, and the size of the draw is not the test. *Ellison v. Robertson*, 357 F.3d 1072, 1078–79 (9th Cir. 2004). The question is whether the specific infringing material at issue drew customers to the defendant, not whether the defendant profited from its service in general. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017).

60. Porter had the right and ability to supervise and control the Channel's content, including the power to stop the retransmission on his own Channel, and received a direct financial benefit because the free availability of the Broadcast was used expressly to draw viewers to the Channel while it received subscriptions and paid support.

61. As of September 24, 2026, Kick's publicly available channel information identified the Channel as an Affiliate with subscriptions enabled. Jones expressly promoted free access to this particular Broadcast as a reason for viewers to

come to Porter's Channel, directing his invitation to persons who had not purchased authorized access and asking viewers to spread the word. Those statements support the inference that Plaintiffs' Broadcast was specifically used to attract an audience to the Channel's monetized programming.

62. Kick had the right and ability to supervise and control the Channel's live stream and recorded replay, including the power to terminate the live retransmission, remove the replay, and suspend the Channel under its own published policies, and received a direct financial benefit from the subscriptions and related monetization that the retransmission drew to the Channel.

63. Porter and Kick each had both the legal right and the practical ability to stop the infringement, and neither stopped it during the period alleged. They are vicariously liable for it, entitling Plaintiffs to the relief described above.

## FOURTH CAUSE OF ACTION

## Breach of Contract

## (By Plaintiff BLK Prime Against Defendant Jones and Those DOE Defendants Who Entered and Breached the Subscriber Terms)

64. BLK Prime incorporates the foregoing factual allegations as though fully set forth herein.

65. BLK Prime was the Publisher and contracting service provider under the Subscriber Terms governing access to the Broadcast. Section 18 of the Subscriber Terms selects Georgia law to govern the agreement.

66. On information and belief, Jones entered the Subscriber Terms in connection with the purchase and use of access to the Broadcast, through the notice and acceptance process described above. Alternatively, if another person entered the agreement and obtained the purchased access used for the retransmission, that person is presently sued as a Doe Defendant. The defendant or defendants who entered the Subscriber Terms in connection with that access are referred to in this cause of action as the "Contracting Defendants."

67. A valid agreement supported by consideration existed between BLK Prime and the Contracting Defendants. In exchange for the purchase price and the Contracting Defendants' agreement to comply with the Subscriber Terms, BLK Prime provided access to the Broadcast for the permitted purposes. Sections 6 and 7 limited use to personal, noncommercial purposes, excluded public performance and distribution from the permitted uses, and included express promises against providing or otherwise transferring the content and causing or permitting others to undertake the prohibited acts.

68. BLK Prime performed its obligations by providing the purchased access to the Broadcast. All conditions precedent to the Contracting Defendants' performance of the obligations at issue occurred.

69. The Contracting Defendants materially breached the Subscriber Terms by using the purchased access and content to supply the Broadcast for retransmission through the Channel to the public, and by providing or causing or permitting others

to provide the Broadcast for that purpose. Jones's conduct included directing how the purchased Broadcast would be presented on the Channel and inviting members of the public to watch there instead of purchasing authorized access. On information and belief, any Doe Defendant liable under this count obtained the purchased access under the Subscriber Terms and supplied or knowingly permitted the use of that access and content for the retransmission.

70. The contractual obligations breached included the agreed limitation of the purchased service to personal, noncommercial use and the express promise against providing the content to others or causing or permitting others to engage in prohibited uses. BLK Prime seeks enforcement of those obligations against the parties who accepted them in exchange for access to its service.

71. As a direct and proximate result of these breaches, BLK Prime suffered damages, including lost net revenue from authorized pay-per-view purchases that it would otherwise have received. The loss of authorized sales was a natural and foreseeable consequence of using purchased access to supply the same paid Broadcast to the public free of charge during the Event. BLK Prime will establish the amount of its damages with reasonable certainty through sales, audience, transaction, and other evidence.

72. On information and belief, Jones acted in bad faith in performing his contractual obligations by deliberately using the purchased access to provide a free public substitute for BLK Prime's paid service, directing the retransmission, and

encouraging viewers to avoid purchasing authorized access. His statements acknowledging the purchase price and inviting viewers to watch without paying demonstrate that the resulting diversion of paying customers was an intended consequence of his conduct. BLK Prime therefore specifically seeks its reasonable attorney's fees and expenses of litigation attributable to this claim against Jones pursuant to O.C.G.A. § 13-6-11.

73. BLK Prime seeks compensatory damages in an amount to be proven at trial, together with recoverable attorney's fees, litigation expenses, and interest as permitted by law. BLK Prime does not seek duplicative recovery for any loss also compensated under another cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For Plaintiffs' actual damages and Defendants' profits attributable to the infringement, in an amount to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, at Plaintiffs' election and to the extent available, statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement;

2. For preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502, in terms that comply with Federal Rule of Civil Procedure 65(d), enjoining Defendants and those in active concert or participation with them who receive actual notice of the order from publicly performing or transmitting the Broadcast or making

any recording of it available to the public, and requiring the removal of every copy of the Broadcast from the Channel and from the Kick platform;

3. For impoundment and destruction of all copies of the Broadcast in Defendants' possession, custody, or control pursuant to 17 U.S.C. § 503;

4. For an accounting of the revenue received by Defendants from the Channel on September 19 and 20, 2026 that is attributable to the retransmission of the Broadcast;

5. To the extent available, for full costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505;

6. For BLK Prime's compensatory damages against the defendants liable on the Fourth Cause of Action, in an amount to be proven at trial, without duplicative recovery of any loss compensated under another cause of action;

7. For BLK Prime's reasonable attorney's fees and expenses of litigation against Jones under O.C.G.A. § 13-6-11, to the extent established on the Fourth Cause of Action;

8. For prejudgment and postjudgment interest as permitted by law; and

9. For such other and further relief as the Court deems just and proper.

DATED: September 24, 2026

Respectfully submitted,
**THE LEW FIRM, APC**

By: *Charles Lew*
Charles Lew, Esq.
Victor R. Balladares, Esq.

Isaiah Artest, Esq.
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

DATED: September 24, 2026

Respectfully submitted,
**THE LEW FIRM, APC**

By: *Charles Lew*

Charles Lew, Esq.
Victor R. Balladares, Esq.
Isaiah Artest, Esq.
Attorneys for Plaintiffs